<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MICHAEL STORMS, *et al.*, <br><br>    Plaintiffs, <br><br>    v. <br><br> DAVID M. CARCIERI, *et al.*, <br><br>    Defendants. | Civil Action No. 25-1262 (MAS) (RLS) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon two motions to dismiss the Complaint (ECF No. 1): (1) a motion to dismiss filed by Defendants David M. Carcieri ("Carcieri") and Somerset County Young Men's Christian Association, Inc. Greater Somerset County[1] ("SC YMCA" and collectively with Carcieri, "SC YMCA Defendants") (ECF No. 10); and (2) a motion to dismiss filed by National Council of Young Men's Christian Associations of the United States of America[2] ("Y-USA" and collectively with SC YMCA Defendants, "Defendants") (ECF No. 16). Plaintiffs Jesus Christ and Michael Storms ("Storms" and "Plaintiff") opposed both motions. (ECF Nos. 15, 20.) Defendants replied. (ECF Nos. 17, 21.) Thereafter, Storms filed supplemental correspondence addressing Defendants' arguments in favor of dismissal. (ECF No. 22.) The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' motions are granted.

---

[1] The entity was improperly pled in the Complaint as "Greater Somerset County YMCA." (*See* SC YMCA Defs.' Mot. to Dismiss 1, ECF No. 10.)

[2] The entity was improperly pled in the Complaint as "YMCA of the USA." (*See* Y-USA's Mot. to Dismiss 1, ECF No. 16.)

## I.    BACKGROUND

### A.    Factual Background[3]

Plaintiff's[4] Complaint is premised upon allegations that "[t]he Y[-USA] used a discriminatory [diversity, equity, and inclusion ('DEI')] program to usurp a volunteer's faith that Jesus Christ alone can forgive sins." (Compl. *1[5].) According to Plaintiff, he has been harmed because, "[s]ince Jesus Christ started his ministry 1,997 years ago, intermittently selfish elites have devalued Jesus Christ and the Holy Spirit who together permit[] each of us a direct relationship with our Creator." (*Id.*)

"The Y[-USA] is a nonprofit organization whose mission is to put Christian principles into practice through programs that build healthy spirit, mind[,] and body for all." (*Id.* ¶ 1.) "Each year the Y[-USA] receives over $600[ million] in government grants which is distributed to the [n]ation's 2,650 local Y[-USA branches]." (*Id.*) Storms is an individual who has maintained a paid membership with Somerset Hills YMCA, which was later incorporated into SC YMCA, for over twenty years. (*Id.* ¶ 2.) During this time, "[Plaintiff] never received any charitable benefits from the Defendants[,]" but he participated in many volunteer activities, such as serving as a "[s]wim official" and an "[a]dventure [g]uide leader[.]" (*Id.*) Storms was also invited to serve as a board member for SC YMCA in March 2023, and he attended regular meetings thereafter. (*Id.*)

---

[3] For the purpose of considering the instant motions, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[4] The Court finds that Jesus Christ is not a proper plaintiff and proceeds in its analysis with Storms as the sole plaintiff in this matter. *See Christ v. Pennsylvania*, No. 22-1084, 2023 WL 11983163, at *1 n.1 (M.D. Pa. Jan. 4, 2023) (noting that complaint identifies two plaintiffs, Jesus Christ and Michael Scott Smith Jr., but determining that "Michael Scott Smith Jr.[] is the sole plaintiff in this action"), *R&R adopted*, 2023 WL 11983158 (M.D. Pa. Feb. 1, 2023).

[5] Page numbers preceded by an asterisk refer to the page number atop the ECF header.

On December 21, 2023, Plaintiff received e-mail correspondence from Margret Butler ("Butler")[6], stating:

> I am reaching out to you on behalf of . . . Carcieri, President and CEO of [SC YMCA] in regards to completing the required background checks, documents and/or trainings. These onboarding requirements are policy set by the Board of Directors. To date, our records indicate you have not completed "**Understanding My Biases**." PLEASE COMPLETE by DECEMBER 31, 2023!

(*Id.* ¶ 3 (emphasis in original).) The required course, "Advancing Equity: Understanding Biases[,]" is an online course that takes approximately thirty minutes and "introduce[s] participants to the concept of bias and explore[s] the positive and negative impact of bias in everyday situations. . . . Th[e] course offers a framework for countering biases and invites [participants] to explore [their] role in strengthening the foundations of community through a deeper understanding of [their] own beliefs." (*Id.* ¶ 4.)

On January 22, 2024, Plaintiff replied to Butler, stating:

> Good afternoon Margret hope all is well. **I'm not in compliance with this requirement as it violates my deeply held religious belief that only Jesus Christ can forgive my sins.** I am asking that this DEI requirement be removed immediately due to its violation of anti-discrimination laws. Kate Russo [("Russo")] [District VP of Operations] was made aware of this last year and I'm surprised that the [SC] YMCA still has persisted in maintaining this discriminatory Anti-Christian requirement part of our policy.

(*Id.* ¶ 5 (second alteration and emphasis in original).)

Hours later, Carcieri replied, stating that:

> The Y is dedicated to helping all people grow in spirit, mind and body. Small day to day actions can create a more diverse, inclusive and welcoming environment. Understanding and adjusting for **implicit bias** is one of those actions. For this purpose, the Board of Directors adopted the policy that all board members and fulltime staff complete the Understanding My Biases training. Objectives for

---

[6] Plaintiff does not allege facts as to who Margret Butler is or her role with either or both of Defendants. (*See generally* Compl.)

3

> the training include: 1) Understanding the concept of implicit bias; 2) Reflecting on instances that you exhibit implicit bias; and 3) Identifying areas of the YMCA that may be impacted by implicit bias. Since you feel these objectives don't align with your beliefs, then apparently this isn't the right fit.

(*Id.* ¶ 6 (emphasis in original).) The next day, January 23, 2024, Carcieri sent follow-up e-mail correspondence stating that "[a]ll new board members should complete the Y-USA Understanding My Biases Training within [ninety] days of their appointment to their first term on the Board of Directors or a Branch Board." (*Id.* ¶ 7.) The correspondence also noted that the training requirement was approved by the SC YMCA's Board of Directors on June 9, 2021. (*Id.*)

Thereafter, on January 24, 2024, Russo sent e-mail correspondence to Plaintiff, stating:

> We appreciate your expressed interest in serving as a Board Member for [SC] YMCA. Currently, in order to align with the standards set by the [SC YMCA] Board of Directors, completion of the required trainings is essential. Unfortunately, as this step has not been fulfilled, we are regrettably unable to extend an invitation to the [SC] YMCA Branch Board meetings at this time. However, we value your enthusiasm and commitment, and should you complete the necessary trainings and still maintain an interest in joining the Branch Board, we eagerly anticipate hearing from you. Your dedication to fulfilling these requirements is highly appreciated, and we look forward to the possibility of your future involvement.

(*Id.* ¶ 8.)

### B.     Procedural Background

Plaintiff, proceeding *pro se*, filed the Complaint on February 12, 2025, alleging six causes of action against Defendants: (1) violation of the Free Exercise Clause of the First Amendment ("Count One"); (2) violation of the Free Speech Clause of the First Amendment ("Count Two"); (3) violation of the Due Process Clause of the Fourteenth Amendment ("Count Three"); (4) violation of Title VI of the Civil Rights Act of 1964 ("Title VI") ("Count Four"); (5) violation of Title VII of the Civil Rights Act of 1964 ("Title VII") ("Count Five"); and (6) violation of the New Jersey Civil Rights Act (the "NJCRA"), N.J.S.A. § 10:1-3, *et seq.* ("Count Six"). (*See*

*generally* Compl.) Thereafter, Defendants filed two motions to dismiss the Complaint in its entirety. (*See generally* SC YMCA Defs.' Mot. to Dismiss; Y-USA's Mot. to Dismiss.) Plaintiff opposed both motions. (*See generally* Pl.'s Opp'n to SC YMCA Defs.' Mot., ECF No. 15; Pl.'s Opp'n to Y-USA's Mot., ECF No. 20.) Defendants replied. (*See generally* SC YMCA Defs.' Reply, ECF No. 17; Y-USA's Reply, ECF No. 21.) Thereafter, Plaintiff filed correspondence making further arguments opposing Defendants' motions. (*See generally* Pl.'s Correspondence, ECF No. 22.)

## II.   <u>LEGAL STANDARD</u>

### A.   **Rule 12(b)(1)**

Under Federal Rule of Civil Procedure[7] 12(b)(1), a defendant may move to dismiss a matter for want of standing "because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (citation omitted). A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999) (citations omitted). As such, a facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*,

---

[7] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

construing the alleged facts in favor of the nonmoving party." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). District courts considering a facial challenge, then, must construe the allegations in the complaint as true and determine whether subject matter jurisdiction exists. *Mortensen*, 549 F.2d at 891; *Cardio-Med. Assocs., Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983). "Thus, '[t]o survive a motion to dismiss [for lack of standing], a complaint must contain sufficient factual matter' that would establish standing if accepted as true." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**B.      Rule 12(b)(6)**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S.

at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages*, 926 F.2d at 1409).

## III.    **DISCUSSION**

Defendants argue that Plaintiff's Complaint should be dismissed in its entirety. For the reasons discussed below, the Court agrees. The Court addresses each motion in turn.

### A.    **Y-USA's Motion to Dismiss**

Y-USA argues that dismissal is appropriate because: (1) the Complaint fails to allege any facts establishing that Y-USA took any action with respect to Plaintiff, had any role in the events as alleged, or maintained a direct or supervisory relationship with SC YMCA; and (2) the Court lacks personal jurisdiction over Y-USA. (*See generally* Y-USA's Moving Br., ECF No. 16-1.)

The Court agrees with Y-USA that the Complaint is entirely devoid of allegations as to Y-USA's purported role in the conduct alleged. (*See generally* Compl.) Rather, the facts as alleged in the Complaint identify actions that the other defendants—namely, the SC YMCA Defendants—purportedly took. (*See, e.g.,* Compl. ¶ 3 (alleging e-mail correspondence from Butler, on behalf of Carcieri, the President and CEO of SC YMCA); *id.* ¶¶ 6-7 (alleging e-mail correspondence directly from Carcieri); *id.* ¶ 8 (alleging e-mail correspondence from Russo related to the SC YMCA).) Moreover, the Complaint is devoid of allegations regarding any control over day-to-day operations, hiring, or decision-making of any local associations, including SC YMCA, such that it would be appropriate to attribute SC YMCA Defendants' conduct to Y-USA. (*See generally id.*) Even construing Plaintiff's *pro se* Complaint liberally, *see Beasley v. Howard*,

7

623 F. Supp. 3d 434, 439 (D.N.J. 2022) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), the Court finds Plaintiff's allegations against Y-USA are not sufficient to state a claim upon which relief can be granted. *See Testa v. Hoban*, No. 17-1618, 2018 WL 623691, at *7 (D.N.J. Jan. 30, 2018) (finding that plaintiff "failed to plead 'a short and plain statement of the claim showing that the pleader is entitled to relief' against [certain d]efendants" where plaintiff failed to plead any allegations as to those defendants (citations omitted)); *McLeod v. Fifth Jud. Dist. of Pa.*, No. 20-1362, 2022 WL 13986832, at *2 (D.N.J. Oct. 24, 2022) ("Pleadings that fail to identify each defendant's role for the alleged wrong are insufficient." (citing *Pushkin v. Nussbaum*, No. 12-324, 2017 WL 1591863, at *7 (D.N.J. Apr. 28, 2017)); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) ("[P]ro se litigants still must allege sufficient facts in their complaints to support a claim.").

All claims against Y-USA are, accordingly, dismissed.[8]

**B.      SC YMCA Defendants' Motion to Dismiss**

SC YMCA Defendants argue that the Complaint should be dismissed in its entirety because Plaintiff has failed to state a claim upon which relief can be granted. (*See generally* SC YMCA Defs.' Moving Br., ECF No. 10-1.) The Court addresses each Count in turn.

***1.      Counts One, Two, and Three***

Plaintiff's Counts One, Two, and Three allege violations of Plaintiff's First and Fourteenth Amendment rights. (*See* Compl. ¶¶ 13-26.) SC YMCA Defendants argue that Counts One, Two, and Three should be dismissed because SC YMCA Defendants are not state actors and their actions

---

[8] As the Court finds that dismissal is appropriate because the Complaint is entirely void of allegations as to Y-USA's conduct, including any operations in this forum state (*see generally* Compl.), the Court cannot and need not fully analyze Y-USA's argument about personal jurisdiction at this juncture.

were not taken under color of state law. (*See* SC YMCA Defs.' Moving Br. 6-12.) The Court agrees.

"To state a constitutional claim, [a plaintiff] must allege facts showing, *inter alia*, that the misconduct involved 'state action.'"[9] *Sprauve v. West Indian Co.*, 799 F.3d 226, 229 (3d Cir. 2015) (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)). "[T]he conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State." *Lugar*, 457 U.S. at 937. There is "no simple line between states and private persons" so courts look to whether "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotation marks omitted) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). In answering that question,

> [the Third Circuit has] outlined three broad tests generated by the Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citation modified).

Here, the Complaint fails to allege any facts that could plausibly establish that the SC YMCA Defendants are state actors or are carrying out state actions. (*See generally* Compl.) In fact, the only allegations remotely tied to Defendants and the Government are the statements

---

[9] This "state action" analysis is equivalent to the "under color of state law" analysis required for claims brought under 42 U.S.C. § 1983. *See Sprauve*, 799 F.3d at 229 ("To state a [S]ection 1983 claim, [plaintiffs] must allege facts demonstrating, *inter alia*, that the misconduct they complain of was 'under color of state law.' . . . The 'under color of state law' analysis is equivalent to the 'state action' analysis." (first citing *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); and then citing *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)).).

concerning SC YMCA Defendant's *co-defendant*, which allege that "[Y-USA] receives over $600[ million] in government grants which is distributed to the [n]ation's 2,650 local Y[-USA branches." (*Id.* ¶¶ 1, 20.) This is simply insufficient to plausibly allege that SC YMCA Defendants' conduct involved "state action" or that SC YMCA Defendants are state actors. *See Sprauve*, 799 F.3d at 229.

Counts One, Two, and Three are, accordingly, dismissed.

### 2.    *Count Four*

Plaintiff's Count Four alleges a violation of Title VI. (*See* Compl. ¶¶ 27-29.) SC YMCA Defendants argue that dismissal of this count is appropriate because: (1) Title VI does not permit a claim based on a person's religion; (2) Plaintiff does not allege he was denied participation in or the benefits of a specific program offered by SC YMCA Defendants; and (3) Plaintiff fails to allege that SC YMCA received federal funding. (SC YMCA Defs.' Moving Br. 12-15.) The Court agrees.

Pursuant to 42 U.S.C. § 2000d, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Here, the Complaint does not allege that Storms was discriminated against on the ground of "race, color, or national original[.]" (*See generally* Compl.); 42 U.S.C. § 2000d. Plaintiff also alleges that he was denied an opportunity to attend board meetings and serve as a board member (*see id.* ¶ 8), but he does not otherwise allege that he was denied the benefits of his membership with SC YMCA or his access to the SC YMCA facilities (*see generally id.*).

10

Moreover, Plaintiff does not allege that the SC YMCA Defendants received any federal funding.[10]

(*See generally id.*) For at least these reasons, Plaintiff's claim must fail.

Count Four is, accordingly, dismissed.

### 3.    *Count Five*

Plaintiff's Count Five alleges a violation of Title VII. (Compl. ¶¶ 30-31.) SC YMCA

Defendants argue that this claim should be dismissed because Plaintiff failed to allege that he filed

a complaint with the Equal Employment Opportunity Commission (the "EEOC"), as is required

in advance of bringing a Title VII claim. (SC YMCA Defs.' Moving Br. 15-16.) The Court agrees.

"A plaintiff 'must exhaust all required administrative remedies before bringing a claim for

judicial relief.' To bring a claim under Title VII, a plaintiff must file a charge of discrimination

with the EEOC and procure a notice of the right to sue." *Mandel v. M&Q Packaging Corp.*, 706

F.3d 157, 163 (3d Cir. 2013) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020-21 (3d Cir. 1997)).

Here, Plaintiff does not allege he exhausted his administrative remedies. (*See generally* Compl.)

This alone is enough to dismiss Count Five.[11]

Count Five is, accordingly, dismissed.

---

[10] As discussed above, the Complaint alleges that Y-USA received some sort of federal funding, but the Complaint does not allege facts regarding how that funding was used. (*See* Compl. ¶¶ 1, 20); *Eisenberg v. Nat'l Dance Inst.*, No. 22-4521, 2023 WL 2966945, at *8 (D.N.J. Apr. 17, 2023) ("Title VI is limited to prohibiting intentional discrimination in a federally funded program, which, importantly, applies only to programs 'where a primary objective of the Federal financial assistance is to provide employment.'" (citation omitted)).

[11] Moreover, Title VII claims are limited to "employees." *See* 42 U.S.C. § 2000e-2(a)(1) ("It shall be unlawful employment practice for an employer . . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"). The Complaint does not allege that Plaintiff was an employee of SC YMCA Defendants. (*See generally* Compl.)

#### 4.    *Count Six*

Plaintiff's Count Six alleges a violation of the NJCRA. (Compl. ¶¶ 32-33.) SC YMCA Defendants argue that this claim should be dismissed because Plaintiff does not allege that SC YMCA Defendants are state actors and Plaintiff's Complaint is otherwise void of allegations to plausibly allege a violation of the NJCRA. (SC YMCA Defs.' Moving Br. 16-18.) Once again, the Court agrees.

The NJCRA provides, in relevant part that:

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion *by a person acting under color of law*, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J. Stat. Ann. 10:6-2(c) (emphasis added).

As noted by the Court above, Plaintiff has not alleged any facts to even suggest that SC YMCA Defendants are state actors or are acting under the color of state law. (*See generally* Compl.) For at least this reason, Count Six must be dismissed. *See, e.g.*, *Hottenstein v. City of Sea Isle City*, 793 F. Supp. 2d 688, 695 (D.N.J. 2011) (dismissing NJCRA claim because claim failed for same reason that plaintiff's Section 1983 failed because plaintiff failed to allege defendant acted under "color of law"); *Cottrell v. Heritages Dairy Stores, Inc.*, No. 09-1743, 2010 WL 3908567, at *1 n.1 (D.N.J. Sep. 30, 2010) ("Because [p]laintiffs have not alleged that [d]efendants are state actors, [p]laintiffs['] NJCRA claim is dismissed.").

Count Six is, accordingly, dismissed.

12

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motions are granted.[12] The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: May 26th, 2026

---

[12] Because Plaintiff is proceeding *pro se*, the Court will afford Plaintiff an opportunity to correct the deficiencies identified in this Memorandum Opinion.